**NAVIMEX S.A. DE C.V. and Agencias Generales Maritimas S.A., Plaintiffs,**

**v.**

**S/S "NORTHERN ICE", S/S "ANNA FLORA", S/S "SALTA", S/S "NORTHERN FROST", S/S "TUSCAN STAR", their engines, tackle, boilers, etc., Jan C. Uiterwyk, Uiterwyk Corporation, Independent Reefer Line, Jan C. Uiterwyk & Co., Inc., Uiterwyk Lines (Lakes), Uiterwyk Shipping Lines, Armasal Lines, Defendants.**

No. 78 Civ. 1780 (VLB).

United States District Court,
S.D. New York.

April 19, 1984.

Yorkston W. Grist, P.C., by David L. Mazaroli, New York City, for plaintiffs.

Burlingham, Underwood & Lord, by Geoffrey J. Ginos, New York City, for defendants.

## OPINION

VINCENT L. BRODERICK, District Judge.

### I.

This action involves a dispute arising out of a general agency and services contract between the plaintiffs, two Mexican corporations, Agencias Generales Maritimas ("Genmar") and Navimex, and the defendants, Independent Reefer Lines ("Independent")[1] and Uiterwyk Corporation, corporations with offices in Florida. Uiterwyk also has a New York office. Neither defendant has an office in Mexico. The plain-

tiffs seek $49,059.99 pursuant to an account stated. The defendants deny owing the plaintiffs any money and have counterclaimed for $13,410.95. (At trial, this figure was recalculated to be $13,634.14.)

There is no admiralty jurisdiction with respect to the general agency relationship which provides the framework for the claims asserted in this action. *P.D. Marchessini & Co. (New York) Inc. v. Pacific Marine Corp.*, 227 F.Supp. 17 (S.D.N.Y. 1964); *see also CTI-Container Leasing v. Oceanic Operations*, 682 F.2d 377, 380 n. 4 (2d Cir.1982). However, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).[2] This opinion contains my findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

### II.

The defendant Independent operated a refrigerated cargo liner service from the United States Gulf to Europe during the years 1975–1977. The service was managed by Independent's general agent, defendant Jan C. Uiterwyk Co. ("JCU") from JCU's Tampa, Florida offices until late 1976, when such general agency was assumed by defendant Uiterwyk Corporation as a result of the merger of JCU into Uiterwyk Corporation.

In January 1975, JCU appointed plaintiff Genmar as port agent for Independent in Mexico. The contract was not formalized in writing but according to its terms, defendants agreed to pay plaintiff Genmar for all work, services and labor performed in connection with defendants' charter lines service of ships calling in Mexico and to reimburse Genmar for expenses incurred in connection with defendants' ships. The

---

1. The name of Independent Reefer Lines has been changed to Uiterwyk Reefer Lines.

2. The parties apparently assumed that there was admiralty jurisdiction, and the record is sparse as to facts pertinent to diversity jurisdiction. The presence of such jurisdiction has been stipulated, however. The following has also been stipulated:

   At all material times, plaintiffs were corporations with offices in Mexico City, Mexico. At all material times, defendants Uiterwyk Corporation, Independent Reefer Line, Jan C. Uiterwyk Co., Inc. and Uiterwyk Shipping Lines were corporations with offices in Tampa, Florida, defendant Jan C. Uiterwyk was an individual residing in Tampa, Florida, defendant Uiterwyk Lines (Lakes) was a business name utilized by Mr. Uiterwyk's interests and defendant Armasal Line was a corporation with offices in San Salvador, El Salvador.

commission rate payable to Genmar under the agreement was 2.5% of the earned freight on inbound cargo.

In early 1976, JCU and the plaintiffs negotiated with respect to a joint venture whereby plaintiff Navimex, which is related to Genmar, would become the nominal carrier on the westbound voyages to Mexico. JCU sought to carry additional cargoes from European ports to Mexico so as to reduce Independent's losses in sailing vessels in ballast on the western trip. The terms of the joint venture were finalized at a meeting in Amsterdam, Holland in May 1976. There was no written contract but the terms were memorialized in memoranda prepared by representatives of the defendants and plaintiffs. Pursuant to this joint venture agreement, cargo would be carried from Europe to Mexico under Navimex bills of lading, and management services would continue to be provided by Uiterwyk Corporation from Tampa. Any losses through December 1976 were to be borne by Uiterwyk Corporation: any profits for the same period were to be shared on the basis of 50% to Uiterwyk Corporation, 25% to Navimex, and 25% to a Spanish agency participating in the venture. Either Genmar or Navimex was to receive 2.5% freight commission on cargoes inbound to Mexico.

From January 1975 through March 1977, plaintiffs Genmar or Navimex performed agency and other functions in Mexican ports. Statements of account were submitted by plaintiffs to defendant Independent in care of JCU or Uiterwyk Corporation on a ship-by-ship basis. Substantial partial payments were remitted by defendants pursuant to plaintiffs' statements of account.

The Mexican peso was devalued in September 1976. To counter the subsequent currency fluctuations which could create unearned profits or losses to either plaintiffs or defendants, the plaintiffs sent defendants a telex outlining the accounting method that it planned to follow. Defendants did not object to the telex and continued to make partial payment on plaintiffs' statements of account.

Due to the unprofitability of the westbound service, in March 1977 the defendants ceased operations of the charter refrigeration liner service to Mexico.

In August 1977, the plaintiffs sent defendants a summary statement of account, showing a total due to plaintiffs of $47,-725.07. Five months later, in January 1978, the defendants objected to this statement and contended that it was the plaintiffs who owed the defendants money. In February 1978, plaintiffs submitted to defendants an adjusted statement of account, showing a total due to plaintiffs of $49,-059.99. In April 1978, plaintiffs brought suit for an account stated in the amount shown to be due on the August 1977 statement of account, $47,725.07. Defendants counterclaimed for $13,410.95. Plaintiffs amended their complaint in June 1978 and alleged that the amount due on the account stated totalled $49,059.99. Prior to trial, plaintiffs credited the defendants with $6,100, representing payment received from defendant's bank which had not been reflected on the plaintiffs' statements of account.

### III.

■ An account stated is an agreement, express or implied, that a statement of account has been asserted, and has been accepted as correct. *Pepper's Steel & Alloys, Inc. v. Lissner Minerals & Metals, Inc.*, 494 F.Supp. 487, 496 (S.D.N.Y.1979). *See also* Restatement (Second) CONTRACTS § 282 (1981). Both parties must express assent to the account as correct. Such assent may be inferred by silence when an account rendered remains unquestioned a reasonable time after receipt: "It is well settled that when an account which has been rendered remains unquestioned for a reasonable time after its receipt that fact is evidence, though of course not conclusive, that the account as rendered has been accepted as correct." *Willard Helburn, Inc. v. Spiewak*, 180 F.2d 480, 483 (2d Cir.1950).

■ The defendants accepted the August 1977 statement of the account as correct. The parties operated under an agreement for two and one half years, and throughout that time they were in frequent communication. Analysis of the course of conduct between the parties reveals that an objection after five months—that is, August, 1977 to January, 1978—was unreasonable. The impact of defendants' failure to object until January 1978 upon plaintiffs' summary statement of account dated August 1977 was to convert that summary statement of account into an account stated.

■ The plaintiffs' supplementary statement of account of February 1978 did not constitute an account stated. In February 1978, there was an underlying dispute between the parties as evidenced by defendants' objection in January 1978 to plaintiffs' August 1977 statement of account, thereby precluding a finding of consent by the defendants to the February 1978 statement.

### IV.

Irrespective of whether an account stated has been established, the defendants maintain that there are errors in the August 1977 statement of account. They attribute these errors 1) to plaintiffs' accounting method; 2) to failure by plaintiffs to credit $6,100 which defendants had paid; and 3) to double billing of commissions by plaintiffs.

■ In spite of defendants' previous assent to the account, they may attack the balance shown in the account by evidence of errors. 6 Corbin on Contracts § 1310 at 252 (1962); *see also* Restatement, Second, CONTRACTS § 282, Comment C & illustration 1 (1981). The defendants have the burden, however, to show where the account is incorrect.

■ Defendants' claim contesting the plaintiffs' accounting method is in substance a renewed argument that the August 1977 statement of account does not constitute an account stated. The accounting method which defendants now attack is the method which they used throughout the relationship between plaintiffs and defendants. Defendants acquiesced in that method not only during the relationship, but also in assenting through their silence to the statement of account of August 1977. Here defendants did not meet their burden.

Plaintiffs acknowledge that defendants have met their burden with respect to the failure to credit a payment of $6,100, and concede that their claim must be adjusted by this amount.

■ With respect to the double commissions, defendants also met their burden. The joint venture agreement concluded in Amsterdam, Holland, as memorialized in memoranda prepared by representatives of plaintiffs and defendants, provided that either Genmar or Navimex but not both was to receive a 2.5% commission. The plaintiffs incorrectly included in the account stated double commissions totalling $14,-180.02. The account stated will be adjusted to accommodate defendants' challenge to the double commissions.

### V.

All of the activities of JCU and Uiterwyk Corporation herein were as agents for a disclosed principal. No evidence was offered as to Uiterwyk Shipping Lines or Uiterwyk Lines (Lake) Armasal Lines. No basis was established for assertion of liability as to Jan C. Uiterwyk individually. The action was *in rem* as to the ships S/S "Northern Ice," S/S "Anna Flora," S/S "Salta," S/S "Northern Frost," and S/S "Tuscan Star," and no efforts were apparently made to establish jurisdiction over them. With respect to each of the defendants named in this paragraph, the judgment to be entered shall dismiss the complaint.

### VI.

Based upon the findings of fact and conclusions of law set forth in this opinion, plaintiffs shall have judgment against de-

fendant Independent for $27,445.05 with prejudgment interest from October 1977. Interest is to be computed at the rate of 6% until June 25, 1981 and at 9% thereafter.[3]

The plaintiff shall submit judgment on two days' notice.

---

**3.** In calculating the amount of damage I have reduced the account stated of $47,725.07 by $20,280.02, to account for the double commissions totalling $14,180.02 and the payment of $6,100 made by the defendants.