In re **ROCKEFELLER CENTER PROPERTIES and RCP Associates, Debtors.**

**National Broadcasting Company, Appellant,**

v.

**Rockefeller Center Properties and RCP Associates, Appellees.**

No. 00 CIV. 5268(LAP).

United States District Court, S.D. New York.

Aug. 3, 2001.

---

*MEMORANDUM AND ORDER*

PRESKA, District Judge.

Appellant National Broadcasting Company ("NBC") appeals the Memorandum Decision of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") granting partial summary judgment to appellee Rockefeller Center Properties ("RCP") and RCP Associates (collectively the "Reorganized Debtors") denying NBC's Proof of Claim relating to the lease of property in the Rockefeller Center complex from the years 1989 through 1992.[1]  For the reasons set

---

**1.** The Bankruptcy Court also denied the 1993    charges related to elevator costs, but the ap-

forth below, the Memorandum Decision of the Bankruptcy Court is affirmed.

## I. BACKGROUND

Appellant NBC has been a tenant of Rockefeller Center since 1937. (NBC's Record on Appeal, Ex. 23, Memorandum Decision Granting in Part, Denying in Part, Debtors' Motion for Partial Summary Judgment, dated April 17, 2000, "Decision" at 3). Over the years, NBC has entered into several different leases with the owners of Rockefeller Center. (*Id.*). In 1988, NBC entered into a Consolidated Lease (the "Lease") with appellee RCP. (*Id.*). RCP was the company primarily responsible for the maintenance and operation of Rockefeller Center; its affiliate, RCP Associates, was the owner of most of the buildings in the complex. (*Id.*).

Under the Lease with the Reorganized Debtors, NBC was required to pay a stated annual rent in monthly installments. (*Id.* at 6). In addition, the Lease required NBC to pay additional rent ("Additional Rent") which was related to operation and maintenance costs. (NBC Mem. at 11). The method for the calculation and payment of the Additional Rent was defined in the Lease. (*Id.*). The Additional Rent to be paid each month was one-twelfth of the final amount of Additional Rent for the prior year. (Decision at 6). At the conclusion of each lease year, the Reorganized Debtors set the final amount of Additional Rent for that prior year and issued a retrospective statement adjusting the account as necessary (*e.g.*, if NBC overpaid, the Reorganized Debtors issued a refund). (NBC Mem. at 12). The statements setting forth the amount of Additional Rent were referred to as "Escalation Statements." (*Id.*).

The Lease explicitly gave NBC the right to perform an audit within six months after the receipt of any Escalation Statement. (Decision at 9). The Lease also required RCP to furnish additional information in substantiation of the amounts set forth in the Escalation Statements if NBC requested such information within six months after the receipt of the statement. (*Id.*).

In 1991, in accordance with the Lease provisions, NBC performed an audit of the 1990 Additional Rent as set forth in the Escalation Statement. (*Id.* at 10). As a result of the audit, NBC discovered that RCP had under billed it by $4,000 for certain elevator usage; the Landlord waived its right to collect the outstanding money. (*Id.*). On two other occasions, in 1991 and 1992 NBC discovered mistakes in its bills. (*See id.* at 10 (discussing NBC's discovery of excessive elevator charges for lease years 1989, 1990, and 1991); *id.* at 11 (noting rent overcharges for period July 1989 through February 1992)). Both of these errors were resolved by RCP. (*Id.* at 11).

In early 1994, NBC also requested an audit of the 1993 Escalation Statement. (Decision at 12). After performing the audit and reviewing RCP's accounting methods, NBC objected to its proportionate share of building costs and certain equipment expense categorizations. (*Id.* at 30). Because the objections were never resolved, NBC withheld a portion of its 1993 Additional Rent; these objections remain unresolved. (*Id.* at 12). NBC also objected to certain extra elevator service and chilled water charges which were discovered as a result of the audit of the 1993 Escalation Statement as well. (*Id.*). The extra elevator charge dispute through July 1993 was settled between the parties by

pellant has not raised this issue on appeal. Additionally, the court denied summary judg-

ment with respect to all other charges relating to lease year 1993. (Decision at 2).

two letters dated December 21, 1992 and September 21, 1993. (*Id.* at 13). Thus, although objections regarding charges in the 1993 Escalation Statement are unresolved, any objections which were raised by NBC with respect to lease years 1989–1992 were settled between the parties, and there are no outstanding substantive protests for those years. (*Id.*).

On May 11, 1995, the Reorganized Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Decision at 3). As a result of the bankruptcy petitions, NBC needed to quantify all of its outstanding claims against the Reorganized Debtors. (NBC Mem. at 8–9). On September 13, 1995, NBC filed a Proof of Claim alleging that it was entitled to a refund of at least $16,067,300 in excess rent and overcharges found in the Escalation Statements. (*Id.* at 9).

In its Proof of Claim, NBC objected to RCP's accounting methodology for the 1992 and 1993 extra elevator charges and chilled water charges, but did not specify any mistakes or errors in the calculation of the Additional Rent. (Decision at 14). NBC later presented the Bankruptcy Court with a report prepared by BDO Seidman, L.L.P., an accounting firm, which identified mistakes in the calculation of Additional Rent. (*Id.*) This report, which was prepared after NBC filed its Proof of Claim, asserted that NBC was overcharged at an annual rate of at least $2 per square foot for operating expense calculations from lease year 1989 through July 17, 1996. (*Id.*)

On November 16, 1996, the Reorganized Debtors moved for summary judgment against NBC's Proof of Claim relating to the excess rent and overcharges during the lease years 1987–1993, and sought a stay of discovery pending the determination of the motion. (NBC Mem. at 9). NBC conceded that the lease years 1987 and 1988 were barred by the statute of limitations and thus only lease years 1989 through 1993 were before the Bankruptcy Court. (Decision at 5). On September 9, 1997, the court granted a limited stay of discovery relating to the lease years at issue until the determination of the summary judgment motion. (*Id.*). On April 17, 2000, the Bankruptcy Court granted the Reorganized Debtors' motion for summary judgment with respect to lease years 1987 through 1992 and denied it with respect to NBC's claim relating to lease year 1993. (*Id.* at 2). The court held that NBC's acceptance of Escalation Statements for the lease years 1989 through 1992, the resolution of all objections by NBC to the Escalation Statements, the payment of Additional Rent, and the exercise of NBC's audit rights created stated accounts for lease years 1989 through 1992. (*Id.* at 30). The court further found that NBC had failed to establish any reason to reopen the settled and paid accounts. (*Id.*). Additionally, the court found that NBC was barred from challenging the paid accounts by the doctrine of estoppel in pais and that no further discovery was necessary. (Decision at 39).

On June 2, 2000, NBC filed a notice of appeal from the Bankruptcy Court's Memorandum Decision. On appeal, NBC argues that: (1) the Bankruptcy Court erred in holding that NBC's claims were barred by the doctrine of account stated; (2) even if an account stated was created, the account should be adjusted because of mistakes, errors and equitable considerations; (3) the Bankruptcy Court erroneously applied the doctrine of estoppel in pais; and (4) NBC should have been given an opportunity to complete discovery relating to the lease years at issue in the summary judg-

ment motion.[2]

## II. DISCUSSION

### A. Standard of Review

■ In exercising appellate jurisdiction, a district court reviews the Bankruptcy Court's finding of facts under a clearly erroneous standard, *see* Fed. R. Bankr. 8013, and its conclusions of law *de novo*. *See In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir.1999); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998).

■ Accordingly, in the present case I must "determine de novo whether there are genuine issues of material fact, drawing all inferences in favor of the non-moving party, and affirming summary judgment only if no reasonable trier of fact could have found for the non-moving party." *In re FYM Clinical Laboratory Inc.*, 95 Civ. 4656, 1997 WL 666238, at *3 (S.D.N.Y. Oct.27, 1997) (citing *Grappo v. Alitalia Linee Aeree Italiane*, 56 F.3d 427, 431 (2d Cir.1995)); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Account Stated Created for Lease Years 1989 Through 1992

■ The Bankruptcy Court held that the Escalation Statements for lease years 1989 through 1992 were subject to the doctrine of account stated.

Under federal and New York law an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due ... The promise may be either express or implied but it must be founded on previous transactions creating the relationship of debtor and creditor.

*The Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 96 Civ. 9469, 1999 WL 191527, at *17 (S.D.N.Y. Apr.7, 1999) (quoting *Ally & Gargano, Inc., v. Comprehensive Accounting Corp.*, 615 F.Supp. 426, 428 (S.D.N.Y.1985)). An account stated may be implied if the party receiving the statement keeps it for a reasonable time without objecting to or questioning the correctness of the account. *See Orb*, 1999 WL 191527, at *17; *Willard Helburn, Inc. v. Spiewak*, 180 F.2d 480, 483 (2d Cir.1950). Additionally, an implied account stated may arise if the debtor makes a partial payment towards reducing the balance of the account. *See Orb*, 1999 WL 191527, at *17; *Chisholm–Ryder Co. v. Sommer & Sommer*, 70 A.D.2d 429, 421 N.Y.S.2d 455, 457 (N.Y.App.Div.1979).

■ Whether a statement has been kept long enough to create an implied account stated is ordinarily a question of fact; such an inquiry, however, becomes a question of law when only one inference is rationally possible. *See Legum v. Ruthen*, 211 A.D.2d 701, 621 N.Y.S.2d 649, 651 (2d Dep't 1995); *see also Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 720 (S.D.N.Y.1986) (granting plaintiff summary judgment where defendant's three year silence regarding legal bills created an implied account stated); *Kay Collyer & Boose v. International Film Productions, Inc.*, 85 Civ. 2478, 1985 WL 3962, at *2 (S.D.N.Y. Nov.25, 1985) (granting summary judgment where it was apparent that defendant could not raise issue of genuine fact regarding account

---

**2.** A fuller account of the facts is set forth in the Bankruptcy Court's decision, and only some of the essential facts are repeated herein.

that was acknowledged and assented to before lawsuit).

■ As of September 1995 (the filing date of NBC's Proof of Claim), NBC had been in possession of: (1) the 1992 Escalation Statements since approximately Feb. 16, 1993; (2) the 1991 Escalation Statement since approximately Feb. 19, 1992; (3) 1990 Escalation Statement since approximately March 29, 1991; and (4) 1989 Escalation Statements since approximately March 31, 1990. (Decision at 9). NBC had ample opportunity to question the correctness of the Escalation Statements, yet it remained silent and waited until the filing of the Proof of Claim in September 1995 to object to the 1989–1992 Additional Rent calculations; such silence "amounts to an implied acquiescence to the stated account." *Kramer, Levin*, 638 F.Supp. at 720.

The Lease presents additional proof that NBC's objections to the Escalation Statement were untimely and unreasonable. First, it provided that the estimated Additional Rent payments to be made during the lease year were due and payable "promptly" upon receipt of any bill from the Landlord. (Decision at 26). Second, the Lease gave NBC six months after the receipt of any Escalation Statement to perform an audit and only required the Landlord to keep the information pertaining to the statement for the six-month time period as well. (*Id.* at 9). Because of the lengthy time period that passed before NBC objected to the Escalation Statements—two to five years—and the Lease provisions relating to NBC's rights to further information and audits, all of the Escalation Statements which fixed the final amount of Additional Rent for the years 1989–1992 were subject to the doctrine of account stated by the time the Reorganized Debtors declared bankruptcy. *See, e.g., Navimex S.A. De C.V. v. S/S North-ern Ice*, 617 F.Supp. 103, 106 (S.D.N.Y. 1984) (finding an account stated was created by defendant's failure to object for five months after receiving the statement); *In re Rockefeller Center Properties*, 241 B.R. 804, 821 (Bankr.S.D.N.Y.1999) (holding that claimant's objections after one to four years were not timely); *In re Shea & Gould*, 198 B.R. 861, 870 (Bankr.S.D.N.Y. 1996) (holding that objection after twenty-three months was not timely).

NBC argues that despite the provisions in the Lease limiting requests for audits and additional information to six months after the receipt of an Escalation Statement, the parties had a practice of correcting mistakes whenever they arose, even after this six-month period. While it is true that RCP corrected errors that were discovered after the six-month period, it only did so on two occasions—once in 1991 correcting erroneous elevator charges and a second time in 1992 adjusting NBC's account to reflect rent overcharges from July 1989 through February 1992. The resolution of these errors in no way represents an established practice of the parties to settle disputes whenever they arose or alters the Lease provisions. The Lease explicitly states that "the forbearance of the Landlord to forgo any contractual right under the NBC Lease 'shall not be construed as a waiver or a relinquishment for future performance' of the right not enforced." (Decision at 33). Even if the Landlord did waive the six-month provision by adjusting NBC's account on those two occasions, it is undisputed that an amendment waiving the six-month provision was never added to the Lease. (*Id.*).

Accordingly, because the Lease was never amended, NBC only had six months after the receipt of any Escalation Statement to object and request an audit. Any instances where RCP resolved errors beyond that time period were merely isolated

instances, and they do not alter the Lease provisions or override the doctrine of account stated.

    C.  NBC Has Presented Insufficient Evidence to Warrant a Reopening of the Account Stated Based on Mistake, Error, or Other Equitable Considerations

■ Although the account stated established between the Reorganized Debtors and NBC is binding and must be enforced at law, such statements may be reopened upon proof of fraud, mistake or other equitable considerations. *Nationscredit Comm. Corp. v. Matlock*, 99 Civ. 32754, 2000 WL 1211579, at \*6 (S.D.N.Y. Aug. 25, 2000); *see also American Home Assurance Co. v. Instituto Nacional De Reaseguros*, 88 Civ. 0917, 1991 WL 4461, at \*3 (S.D.N.Y. Jan.10, 1991) (S.D.N.Y. Jan. 10, 1991) ("Because an account stated is not conclusive as a settlement if mistake is shown to impeach it, an account stated can always be opened upon proof of mistake or fraud.") (internal citations omitted).

■ In the present case, NBC, the party seeking to reopen the account, bears the burden of demonstrating that the account is incorrect. *See Navimex*, 617 F.Supp. at 106. NBC's ability to rebut the account, however, is subject to limitations. Once an account stated has been established, "the debtor [NBC] may no longer contest the accounting method which was used throughout the relationship without protest." *American Home*, 1991 WL 4461, at \*3. Instead, the debtor is limited to proving factual mistakes "within the context of an accounting method it is no longer entitled to challenge." *Id.* (citing *Navimex*, 617 F.Supp. at 106). If the debtor does prove such factual mistakes, the debt-

or may be entitled to an adjustment to those specific portions of the account, but not bar the entire account stated. *See id.*

■ NBC contends that the Escalation Statements should be reopened because the Reorganized Debtors made mistakes in the calculation of the Additional Rent. (Decision at 23). In its Proof of Claim, NBC asserted that it was owed a refund of at least $16,067,300 in rent overcharges, yet it failed to support this allegation. (*Id.* at 4, 23). NBC has failed to make any allegations of fraud, or specified any mistakes which would result in the overcharges. (*Id.* at 23).[3]

    NBC attempts to support its speculative allegation asserted in the Proof of Claim with an accounting report prepared by BDO Seidman, L.L.P. (*Id.* at 14, 34). The report, which was prepared after the Proof of Claim was filed, concludes that the overcharges resulted from errors in the Reorganized Debtors' accounting methods and the improper inclusion of certain expenses in the calculation of Additional Rent. (*Id.* at 34). First, even if the report is correct, it is untimely. The Lease expressly gave NBC a six-month opportunity to verify the Escalation Statements, yet NBC failed to do so and waited almost five years to hire a private accounting firm to investigate the accuracy of the statements. "This is not an adequate response by a party whose failure to object or inquire over a prolonged period of time has transformed statements of account in question into an account stated." *American Home*, 1991 WL 4461, at \*4. Second, as noted above, because an account stated was established between the parties, NBC is no longer able to challenge the Reorganized Debtor's accounting methods, and thus, the portion

---

**3.** NBC did allege certain excess elevator charges and water cooler charges in its Proof of Claim, but it did not specify any errors with respect to the calculation of the Additional Rent. (Decision at 14).

of BDO Seidman's report questioning such methods may not be considered.

### D. Estoppel in Pais

The Bankruptcy Court also held that NBC was prevented from challenging the paid accounts stated because "[t]he doctrine of estoppel in pais bars an account debtor's claims 'if the [account] debtor by its failure to object or inquire within a reasonable time places the creditor in a worse position than ·if timely protest or inquiry had been made.' " (Decision at 38) (quoting *American Home*, 1991 WL 4461, at *3). The court reasoned that the Reorganized Debtors would be prejudiced by a number of factors including faded memories and departed employees, and thus NBC was barred by estoppel in pais. (*Id.* at 39).

■■■■ While it is true that NBC's failure to object in a timely manner would prejudice the Reorganized Debtors, this is only one factor to consider in determining the applicability of estoppel in pais. The essential elements of estoppel in pais, more commonly referred to as equitable estoppel, *see Black's Law Dictionary* 551 (6th ed. West 1990), are:

> as related to the party to be estopped (1) conduct which amounts to a false representation or concealment of material facts, (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons, and (3) knowledge, actual or constructive, of the real facts. With respect to the party to which representations have been made, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance in good faith upon the conduct or statements of the party to be estopped, and (3) action or inaction based thereon of such a character as to

change the position or status of the party claiming to estoppel [sic] to his detriment. (footnote omitted).

*In re Texaco*, 254 B.R. 536, 560–61 (Bankr. S.D.N.Y.2000) (quoting 12 Am.Jur.2d, Bills and Notes § 554 (1997)).

■■■ The excerpt from *American Home* quoted by the Bankruptcy Court does not fully reflect the elements of estoppel in pais. In fact, in its entirety the quote states, "if the debtor by its failure to object or inquire within a reasonable time places the creditor in a worse position than if timely protest … had been made, the case *may* fall 'within the principles of estoppel in pais.' " *American Home*, 1991 WL 4461, at *3 (quoting 1 N.Y. Jur.2d *Accounts and Accounting* § 22 at 173 (1979)) (emphasis added). There are no allegations that NBC engaged in any conduct amounting to false representation or concealment of material facts. Furthermore, because NBC did not engage in any such conduct, it could not have intended that the Reorganized Debtors would rely upon such misrepresentations. Lastly, NBC did not have constructive or actual knowledge of the facts; indeed, NBC actually requested further discovery to learn these very facts.

Because the elements of equitable estoppel have not been established with respect to NBC, it is unnecessary to reach the question of prejudice to the Reorganized Debtors. Accordingly, although NBC's claims are not barred by the doctrine of estoppel in pais, it is still unable to challenge the alleged overcharges and excess rent for lease years 1989 through 1992 because there claims are barred by the doctrine of account stated.

### E. NBC is Not Entitled to Further Discovery into Lease Years 1989 Through 1992

NBC argues that the Bankruptcy Court erred in denying discovery into lease years

1989 through 1992, the years at issue in the summary judgment motion.

 If the opponent of a motion for summary judgment claims to be unable to produce evidence in opposition, the Court of Appeals requires the party to file an affidavit pursuant to Rule 56(f). "The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994).

 NBC failed to submit a Rule 56(f) affidavit specifying "what" additional discovery was needed and "why." NBC argues that all of the necessary information was before the court in affidavits which were submitted in opposition to summary judgment, and thus the most NBC can be accused of is a technical violation. The failure to file such a Rule 56(f) affidavit, however, is "by itself enough to reject a claim that the opportunity for discovery was inadequate." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (S.D.N.Y.1985).[4]

 Additionally, NBC is requesting discovery so that it may ascertain the full nature of its claims, yet it had the right to, and indeed did, conduct accounting reviews and/or audits for the lease years at issue. (Decision at 39). In essence, NBC is speculating that further discovery will reveal evidence of mistakes or errors in the calculation of the Additional Rent. Such conjecture is not enough to grant discovery; "Rule 56(f) cannot be relied upon to defeat a summary judgment motion where the result of a continuance to obtain further information would be wholly speculative." *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981) (citations omitted).

Accordingly, NBC is not entitled to additional time for discovery because it failed to satisfy the requirements of Rule 56(f) and even if it had complied with Rule 56(f), it had ample opportunity to review the relevant Escalation Statements and thus any further discovery is unnecessary and based on speculation.

### III. CONCLUSION

For the reasons set forth above, the court finds that there are no genuine issues of material facts with respect to the Escalation Statements for lease years 1989 through 1992 and thus the Bankruptcy Court's grant of partial summary judgment is affirmed.

SO ORDERED

---

4. NBC contends that it did not submit a Rule 56(f) affidavit because when it requested discovery at a hearing on Sept. 9, 1997, the Bankruptcy Court stated that the case did not present "a [Rule 56(f)] situation." (NBC Mem. at 34). I note that at the point NBC requested such discovery (Sept. 9, 1997), it's opposition papers were fully submitted and both parties had submitted joint proposed findings of facts which did not mention Rule 56(f). (RCP Mem. at 37). Accordingly, even if the court may have discouraged NBC from filing a Rule 56(f) affidavit, NBC's request for further discovery was untimely.