ZHUHAI WINNERS M & E LTD., Zhuhai Libo Trading Co. Ltd., Charterlink International (HK) Limited, Zhuhai Ming Bo Development Co. Ltd., and Zhuhai Winner Electromechanical Project Co., Ltd., Plaintiffs,

v.

The HUDSON VALLEY UMBRELLA COMPANY, INC., Defendants.

No. 08 Civ. 6579(JSR).

United States District Court, S.D. New York.

Oct. 8, 2009.

Joel Scott Ray, Dai & Associates, P.C., Flushing, NY, for Plaintiffs.

Joseph Robert Sahid, Law Offices of Joseph R. Sahid, New York, NY, for Defendants.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

In July 2008, plaintiffs Zhuhai Winners M & E Ltd., Zhuhai Libo Trading Co. Ltd., Charterlink International (HK) Limited, Zhuhai Ming Bo Development Co. Ltd., and Zhuhai Winner Electromechanical Project Co., Ltd. (collectively, "Zhuhai") brought this action to recover money allegedly owed to them by defendant, The Hudson Valley Umbrella Co., Inc. ("Hudson"). Plaintiffs, a group of Chinese companies all owned by the same shareholder, manufacture umbrellas, and over the course of several years, Hudson, a New York company run by Richard and Helen Stromberg, repeatedly purchased umbrellas from Zhuhai for distribution in the United States. Hudson, over the course of the parties' relationship, made payments for most but not all of the umbrellas it ordered, and plaintiffs now assert five state-law causes of action seeking to collect the difference.[1] On March 25, 2009, Zhuhai moved for partial summary judgment.[2]

1. Specifically, plaintiffs assert claims for 1) breach of contract, 2) breach of implied-in-fact contract, 3) unjust enrichment, 4) breach of the implied covenant of good faith and fair dealing, and 5) an account stated.

2. Plaintiffs styled their motion as one for partial summary judgment because they initially intended to argue that there were no issues of material fact concerning only a part of the total sum to which they claim they are entitled. In their motion papers, however, the plaintiffs asked the Court to treat their motion as seeking full summary judgment—i.e., as seeking the entire sum. Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment at 1 n. 1. The Court has treated their motion as one for full sum-

The Court received briefing from the parties and heard oral argument on May 12, 2009. At that time, the Court requested further submissions from the parties, *see* tr. 5/12/09, and having received those submissions, the Court now grants plaintiffs' motion in part and denies it in part.

The parties do not dispute certain basic facts. Between April 2005 and January 2008, Hudson made a series of 307 purchases of umbrellas from Zhuhai. Affidavit of Patrick [Zhuo][3] in Support of Plaintiffs' Motion for Partial Summary Judgment ("Zhuo Aff.") ¶ 3. The total price of these umbrellas was $2,220,047.79. *Id.* Over the course of the parties' relationship, Hudson made payments totaling $1,876,322.10. *Id.* Hudson did not pay charges billed in 68 invoices totaling $343,725.69. *Id.* By May 1, 2008, Zhuhai had begun demanding interest payments of $2,749.81 per month, and Hudson made several such payments.[4] On June 14, 2008, Hudson prepared and apparently sent to plaintiffs an "Open Balance" statement summarizing all of the invoices sent from Zhuhai to Hudson over the course of the parties' relationship, indicating which had been paid and when, showing that 68 invoices remained unpaid, and stating that the total outstanding balance was $343,725.69. *See* Plaintiffs' Rule 56.1 Statement ("Pl. 56.1") ¶ 2; Defendant's Statement Pursuant to Local Rule 56.1 in Opposition to Plaintiff's Motion for Summary Judgment ("Def. 56.1") ¶ 2[5]; Ex. C to Zhuo Aff. On June 23, 2008, Patrick Zhuo, the owner and president of the plaintiff companies, Zhuo Aff. ¶ 1, wrote to the Hudson principals stating,

> Regarding the past due invoices of total $343,725.69, which Hudson Valley Umbrella Company owes us, we have not received the interest payment of May, 2008. Can you please let me know when you are going to wire transfer the interest payment to us? Also, since the U.S. dollar exchange rate is decreasing everyday, I want to know your plan of paying off these past due invoices.

Ex. B to Zhuo Aff. On June 26, 2008, Stromberg wrote to Zhuo, in an email the significance of which is debated,

> I am sorry it took me so long to get back to you. I have been sick lately.[6]
>
> We plan to pay you every U.S. Dollar we owe you although it will take some time because:
>
> Business is terrible in the USA now, and it seems to be getting worse. Public

---

mary judgment, but finds, as discussed below, that plaintiffs are entitled to summary judgment regarding only a part of the amount they seek.

**3.** Although the document caption gives the affiant's name as "Patrick Zhou," other references to the affiant both in the affidavit itself and elsewhere in the record indicate that the correct spelling of his name is "Zhuo."

**4.** The record includes three notices sent to Hudson by Zhuhai dated May 1, June 1, and July 1, 2008, respectively, demanding interest in the amount of $2,749.81 per month on a balance of $343, 725.69. Ex. B to Zhou Aff. There is also evidence that Hudson made five such payments beginning on April 7, 2008.

Ex. E to Declaration of Joel Scott Ray in Support of Plaintiffs' Motion for Partial Summary Judgment Motion [sic].

**5.** Although defendant apparently disputes plaintiffs' interpretation of the significance of this document, it does not dispute that it prepared and sent the document to plaintiffs.

**6.** According to Helen and Richard Stromberg's affidavits, Richard was President of Hudson until 2006, when he became sick. He took on the role of Chairman and Helen became President. *See* Affidavit of Helen Stromberg in Opposition to Plaintiff's [sic] Motion for Summary Judgment ¶ 1; Affidavit of Richard Stromberg in Opposition to Plaintiff's [sic] Motion for Summary Judgment ¶ 1.

confidence in the economy is at the lowest level in 20 years and the stock market has declined by nearly 10% in the last 60 days. Additionally our currency, as you know, has been under extreme pressure for quite some time.

You must know that Jian [Jack] Wen Wu has resigned his position with us. Jack's last day was Thusday [sic] June 19, 2008. We parted as friends.

It will take our new Controller.. Michael Pastore 3 to 4 weeks to settle into and really become expert in all or all financial issues [sic]. Michael knows about our debt to you and our intensions [sic] to pay you in full.

At this time all we can do is to continue to do [sic] is to pay you interest on the outstanding balance.

We are under additional pressure now because the factories we are dealing with have made their financial requirements for payment much harder than they were when Jack was here. This is a very difficult for us [sic].

Lastly: we have a very large amount of inventory which, at this time, is not selling well.

Thanks for your understanding and cooperation.

Email from Richard Stromberg to Patrick Zhuo dated June 26, 2008, Ex. D to Zhuo Aff. On July 16, 2008, plaintiffs filed the instant action.

Defendant's position, in sum, is that it made objections to certain shipments of umbrellas on the ground that they were defective and that defendant therefore does not owe plaintiffs the entire $343,725.69. Plaintiffs essentially concede that at some point, defendant did lodge objections to eight invoices. Zhuo Aff.

¶ 10. Zhuo states that these complaints were resolved but concedes that "the facts concerning the resolution do not readily lend themselves to a motion for summary judgment." *Id.* Zhuo further states that in one case, Hudson was credited for a shipment, and in another case, the issue was resolved when Zhuhai sent Hudson replacement straps for some umbrellas.[7] *Id.*

Defendant, meanwhile, maintains that complaints were made regarding more than eight invoices. The record contains emails and faxes that show defendant making complaints and/or discussing quality problems on a number of dates, including March 28, 2007, July 23, 2007, August 15, 2007, September 7, 2007, September 11, 2007, September 18, 2007, October 18, 2007, and December 22, 2008. *See generally* Ex. 1 to Affidavit of Helen Stromberg in Opposition to Plaintiff's [sic] Motion for Summary Judgment ("Helen Stromberg Aff.") (collecting documents). Defendant has also produced copies of photographs that were apparently taken to record defects in the umbrellas. *Id.* In addition, both Richard and Helen Stromberg testified at their depositions that complaints were made over the telephone by Jack Wu, who managed the Zhuhai account for defendant, Deposition of Helen Stromberg ("Helen Stromberg Dep.") at 98:3–11; Deposition of Richard Stromberg ("Richard Stromberg Dep.") at 72:11–18, and Richard Stromberg testified at his deposition that there were more than ten (but less than a hundred) incidents in which Hudson received defective goods from Zhuhai, Richard Stromberg Dep. at 87:6–25.

▮ Against this background, the Court turns to the arguments advanced by plaintiffs in support of their motion. First,

---

7. Helen Stromberg testified at her deposition that these replacement straps were useless because "we don't have the equipment nor the manpower to replace their junk." Deposition of Helen Stromberg at 66:22–24.

plaintiffs argue that there was an "account stated" between the parties pursuant to which defendant agreed that it owed $343,725.69. "Under federal and New York law, an 'account stated' refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due. . . . The promise may be either express or implied." *Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 615 F.Supp. 426, 428–29 (S.D.N.Y.1985). A promise to pay can be implied when a creditor sends a statement of account to a debtor and the debtor keeps it for a reasonable time without objecting, *see, e.g., RPI Professional Alternatives, Inc. v. Citigroup Global Markets, Inc.*, 61 A.D.3d 618, 619, 878 N.Y.S.2d 36 (1st Dep't 2009), or when a debtor makes partial payments on a debt claimed by the creditor, *see, e.g., Gassman & Keidel, P.C. v. Adlerstein*, 63 A.D.3d 784, 880 N.Y.S.2d 514 (2d Dep't 2009).

Plaintiffs point to various events which they claim gave rise to an account stated. First, they point to the invoices and emails sent to defendant beginning in April or May 2008 that state that the total amount owed to plaintiff is $343,725.69. Next, they point to the June 14, 2008 "Open Balance" statement. They argue that because defendant made no objections to any of these statements of the total owed until after this litigation commenced, an account stated was created. Plaintiffs also point to Richard Stromberg's June 26, 2008 email in which he stated, *inter alia,* "[w]e plan to pay you every U.S. Dollar we owe you." They claim that this constitutes an acceptance of the $343,725.69 figure.

Defendant responds that at the time it made the series of "interest" payments, sent the "Open Balance" statement to Zhuhai, and Richard Stromberg wrote the June 26, 2008 email, Hudson was in the process of reviewing its account with Zhu-

hai, negotiating disputed amounts with Zhuhai, and trying generally to get on top of its finances after Jack Wu left the company and a new Controller was hired. In support of this account, they point to the references Stromberg made in his email to Wu's departure and the difficulty of sorting through their finances, as well as to deposition testimony by the Strombergs' discussing the situation. In addition, the Strombergs' testimony indicates that Wu was in essentially in charge of negotiations with Zhuhai and that he told them to make the interest payments to show their "good faith" while disputes between the parties were worked out, Richard Stromberg Dep. at 30:16–20, 111:22–112:21, 119:14–120:7; and that during the period they were making interest payments Zhuo "damn well knew what our complaints were and the amount of money involved," *id.* at 118:24–119:2. Further, defendant argues that Richard Stromberg's statement in his email that "[w]e plan to pay you every U.S. Dollar we owe you" simply means that Hudson planned to pay Zhuhai what it found that it actually owed Zhuhai once its accounts were sorted out.

Interpreting the evidence in the light most favorable to defendants, the Court concludes that a reasonable jury could find that Hudson did not accept Zhuhai's statements of the $343,725.69 without objection but rather did dispute the total owed. Moreover, in addition to the evidence pointed to by defendant that objections were made, there are a number of other failings in plaintiffs' theory. Even if defendant did not object, an account stated cannot be implied until a "reasonable period" of time has passed. Plaintiffs point to no case in which a court has found that a period of time of less than five months fulfilled this requirement. *See Navimex S.A. De C.V. v. S/S Northern Ice*, 617 F.Supp. 103, 106 (S.D.N.Y.1984). Plaintiffs do point to a number of cases in which

courts have found that an objection made after litigation has commenced is not made within a reasonable period of time, *see, e.g., Regent Partners, Inc. v. Parr Dev. Co., Inc.*, 960 F.Supp. 607 (E.D.N.Y.1997), but it cannot be the case that a creditor can close the door on a debtor's opportunity to object to the creditor's bill by precipitously filing a lawsuit. Where, as here, a plaintiff has filed a lawsuit less than four months after presenting the defendant with its first purported statement of account (Zhuhai claims that it presented Hudson with the total owed as early as April 2008, and this suit was filed in mid-July 2008), its argument that an implied account stated was created by the defendant's failure to object is unpersuasive.

As for the "Open Balance" statement, there are considerable problems with plaintiffs' argument that Hudson prepared this to indicate its final calculation of the debt it owed to Zhuhai. As an initial matter, neither Helen nor Richard Stromberg has any direct knowledge of when or how it was prepared, *see* Helen Stromberg Dep. at 25:23–26:14; Richard Stromberg Dep. at 84:10–25, and Richard Stromberg testified that it was likely prepared by Jack Wu, Richard Stromberg Dep. at 84:20–25. Because Wu was apparently not deposed, there is no information in the record indicating what it was intended to reflect or not reflect. Furthermore, the "Open Balance" statement does not reflect in any way the disputes over invoices that Zhuhai acknowledges took place, *compare* Zhuo Aff. ¶ 10 (enumerating eight disputed invoices) *with* Ex. C to Zhuo Aff. (reflecting that some of these enumerated invoices were paid by Hudson, some were not paid, and one was paid and then credited), and Richard Stromberg testified that it was Hudson's practice, in order to keep a good

relationship with Zhuhai, to pay invoices when they were received and then raise disputes later, Richard Stromberg Dep. at 74:21–74:11.

On these facts, the Court cannot conclude at the summary judgment stage that the "Open Balance" statement reflects a final reckoning rather than a simple record of invoices billed and paid, with no reference to subsequent disputes over those payments. Nor does Stromberg's email compel a different conclusion. It can plausibly be construed as simply a good faith assertion that Hudson was working through its accounts but would pay Zhuhai the appropriate amount once its books were squared away.

■ Plaintiffs' next theory advanced in support of their motion is that Hudson accepted the umbrellas within the meaning of New York's Uniform Commercial Code ("UCC"). The UCC provides, in relevant part, that

> (1) Acceptance of goods occurs when the buyer
> (b) fails to make an effective rejection ..., but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them.

N.Y. U.C.C. § 2–606. Plaintiffs argue that Hudson accepted all of the umbrellas that were shipped to them except for the shipments referenced in the eight invoices that Hudson acknowledges were disputed. Since those invoices total $34,882.75, Zhuhai argues that under this theory, it is entitled to judgment in the amount of $308,842.94.[8] Zhuhai argues, in the alternative, that it is entitled at the very least to $212,504.45, based on a document produced by Hudson on February 27, 2009, Ex. F to Zhuo Aff., which is a revised version of the "Open Balance" statement

---

**8.** Zhuhai's original motion for *partial* summary judgment was apparently made on the theory that it would concede the $34,882.75; it later, apparently, rethought this approach.

offering a tabulation of the total number of shipments that defendant alleges were defective. The total amount paid for defective umbrellas, according to this document, was $131,221.24, which leaves $212,504.45 undisputed.[9]

The Court does not find that Zhuhai is entitled to $308,842.94. As described above, Hudson claims that it rejected more than the eight shipments that Zhuhai acknowledges were disputed. Taken in the light most favorable to Hudson, the testimony summarized above concerning additional objections that were made orally creates a triable issue of fact as to whether it objected to more than $34,882.75 worth of umbrellas.

■ However, the Court agrees with plaintiffs that they are entitled to $212,504.45 on the theory that these goods were accepted within the meaning of UCC § 2–606. Even interpreting the evidence in the light most favorable to Hudson, there is no indication that they ever rejected, on any ground, more than $131,221.24 worth of umbrellas. Defendant argues that it owes nothing to plaintiffs because it incurred duty and ocean freight charges in returning defective umbrellas as well as damages in the form of lost profits and other "extra costs," and these costs totaled over $343,725.69. *See* Ex. 2 to Helen Stromberg Aff. at H219. But in addition to the fact that these costs are not documented in any particularized way in the record—defendant offers only self-generated account statements totaling them up—defendant's argument faces the problem that whatever costs and damages it may have incurred as a result of Zhuhai's alleged conduct, Hudson never asserted a counterclaim or even an affirmative defense asserting these costs and damages and/or seeking compensation for them. Under these circumstances, the Court cannot award Hudson a setoff claim or otherwise factor these allegations into its calculation of the judgment to which plaintiffs are entitled.

For the foregoing reasons, the Court hereby grants partial summary judgment to plaintiffs, holding defendant liable to plaintiffs in the sum of $212,504.45, and otherwise denies plaintiffs' motion. The parties are directed to jointly call chambers by no later than October 15, 2009 to set a date for trial of the remaining claims. Finally, the Clerk of the Court is directed to close entries number 16 and 28 on the docket for the case.

SO ORDERED.

---

**9.** Zhuhai, in fact, argues that it is entitled to $212,621.45 because Hudson only objected to $131,104.24 worth of umbrellas, *see* Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment at 8. But the document in question lists the total for allegedly defective umbrellas as $131,221.24, Ex. F. to Zhuo Aff.